UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

COREY S.,

                                        Plaintiff,

v.                                                        5:20-CV-0678
                                                              (ML)

COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.
_____

APPEARANCES:                              OF COUNSEL:

OLINSKY LAW GROUP                         HOWARD D. OLINSKY, ESQ.
Attorneys for Plaintiff
250 S. Clinton Street, Suite 210
Syracuse, New York 13202

U.S. SOCIAL SECURITY ADMIN.               JESSICA RICHARDS, ESQ.
  *Counsel for Defendant*
J.F.K. Federal Building, Room 625
15 New Sudbury Street
Boston, Massachusetts 02203

**MIROSLAV LOVRIC**, United States Magistrate Judge


## MEMORANDUM-DECISION AND ORDER

        Plaintiff Corey S. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking

judicial review of a final decision of the Commissioner of Social Security ("Defendant" or

"Commissioner") denying his applications for Social Security Disability Insurance ("SSDI") and

Supplemental Security Income ("SSI").  (Dkt. No. 1.)  This case has proceeded in accordance

with General Order 18 of this Court which sets forth the procedures to be followed when

appealing a denial of Social Security benefits.  Currently before the court are Plaintiff's motion

for judgment on the pleadings and Defendant's motion for judgment on the pleadings. (Dkt. Nos. 11, 13). For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is granted and this case is remanded to the Social Security Administration ("SSA") for further administrative proceedings.

## I.    PROCEDURAL HISTORY

On May 1, 2017, Plaintiff filed applications for SSDI and SSI, alleging that he became disabled on September 23, 2016 due to back, neck and shoulder injuries sustained in a motor vehicle accident. (Administrative Transcript ("T.") 203-217.) His applications were denied initially on July 20, 2017. (T. 112-139.) Plaintiff requested a hearing, which was held on February 13, 2019 before Administrative Law Judge ("ALJ") David Romeo. (T. 72-111.) During the hearing, the ALJ heard testimony from Plaintiff and from vocational expert ("VE") Joseph Atkinson. (T. 76-108.) The ALJ issued an unfavorable decision on March 4, 2019. (T. 8-34.) This became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review on April 17, 2020. (T. 1-7.)

## II.    GENERALLY APPLICABLE LAW

### A.    Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986.

2

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g) (2015); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). To facilitate the court's review, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010); *see also Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Featherly*, 793 F. Supp. 2d at 630; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citations omitted). Where substantial evidence supports the ALJ's findings they must be sustained "even where substantial evidence may support the plaintiff's positions and despite that the court's independent analysis of the evidence may differ from the [ALJ's]." *Rosado*, 805 F. Supp. at 153. In other words, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## B.    Standard for Benefits[1]

To be considered disabled, a plaintiff-claimant seeking benefits must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A) (2015).  In addition, the plaintiff-claimant's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id*. § 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. § 405(a)), the Social Security Administration ("SSA") promulgated regulations establishing a five-step sequential evaluation process to determine disability.  20 C.F.R. § 416.920(a)(4) (2015).  Under that five-step sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments;  (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments;  (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the

---

[1]  The requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) and Title II, 42 U.S.C. § 423(d), are identical, so that "decisions under these sections are cited interchangeably."  *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

## III.   FACTS

As of the date of the ALJ's decision, Plaintiff was 43 years old. (T. 76.)  He left school in the eleventh grade, but subsequently obtained his GED. (T. 79, 366.)  At his hearing, Plaintiff testified that he resides with his wife and nineteen-year-old daughter and has an adult son who visits regularly. (T. 76-79.)  Plaintiff's prior employment includes positions in janitorial and building maintenance, school cafeteria food service, and residential and commercial painting. (T. 80, 232.)

Plaintiff has a history of neck, back, and shoulder pain that dates back to at least 2009. (T. 86, 340, 408.)  In September 2016, Plaintiff was involved in a motor vehicle accident and suffered neck and shoulder injuries that exacerbated his condition. (T. 308.)  He stopped working shortly after the accident. (T. 86, 340.)  He had left shoulder surgery in February 2017 and right shoulder surgery in May 2017.  (T. 340-341.)  Plaintiff's physicians advised him that he had a degenerative condition in his cervical spine that was likely to progress over time and may eventually require surgical intervention. (T. 315, 328, 514.)  Until surgery was necessary, Plaintiff followed their recommended treatment approach of epidural injections and physical therapy. (T. 88-89, 587, 625, 648, 681.)

As a result of his physical impairments, Plaintiff experiences neck and back pain that radiates to his upper and lower extremities, causing numbness and weakness. (T. 88, 349, 582-

583.)  He testified that he was limited to lifting between ten and fifteen pounds, and that his pain forced him to shift positions from sitting to standing about every five to ten minutes. (T. 89-90.) Muscle weakness, particularly in his right leg, required him to use a cane. (T. 95.)

The record includes Plaintiff's treatment history.  Rather than summarizing the records at the outset, I will refer to the pertinent records during my discussion of Plaintiff's arguments.

## IV.   THE ALJ'S DECISION

As an initial matter, the ALJ found that Plaintiff met the insured status requirements through March 31, 2022.  (T. 13.)  After finding that Plaintiff did not engage in substantial gainful activity ("SGA") after the alleged onset date of September 23, 2016, the ALJ found that Plaintiff had the following severe impairments: "both shoulders status-post surgery, degenerative arthritis and disc disease of the neck, low back degenerative arthritis and soft tissue pathology of both shoulders, mild chronic cervical radiculopathy, generalized anxiety disorder, and unspecified depressive disorder."  (T. 13-14.)

At step three of the evaluation, the ALJ found that Plaintiff's impairments either singly or in combination did not meet or medically equal the severity of a listed impairment. (T. 14-17.) At step four, the ALJ found that Plaintiff could perform less than the full range of sedentary work.  Specifically, the ALJ found that Plaintiff could not perform any overhead lifting or reaching with either upper extremity but could perform frequent reaching in all other planes; could occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; could never climb ropes, ladders or scaffolds; could frequently handle, finger, and feel with both upper extremities; could understand, remember, and carry out simple instructions and make simple work-related decisions; could sustain an ordinary routine without special supervision; could work at a consistent pace throughout the workday, but not at a production-rate pace where each

task must be completed within a strict time-deadline; could tolerate occasional interaction with co-workers and supervisors; required an option to stand for two minutes after every thirty minutes of sitting, but could remain on task while standing; and required a cane for ambulation. (T. 17.)

In making the RFC determination, the ALJ stated that he considered all of Plaintiff's symptoms, and the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 404.1529, 20 C.F.R. 416.929" and Social Security Ruling ("SSR") 16-3p. (*Id.*) The ALJ further stated that he considered opinion evidence and prior administrative medical findings in accordance with 20 C.F.R. § 404.1520c and 20 C.F.R. § 416.920c. (*Id.*) The ALJ also considered Plaintiff's subjective complaints regarding pain, symptoms, and functional limitations raised during the hearing and in the overall administrative record. (T. 24-25).

At step four, the ALJ determined that Plaintiff was not capable of performing his past relevant work. (T. 26.) However, based upon the RFC and the testimony of VE Atkinson, the ALJ determined that there were jobs existing in significant numbers in the national economy that Plaintiff could perform. (T. 27-29.) Accordingly, the ALJ found that Plaintiff was not disabled from the alleged onset date through the date of his decision. (T. 26.)

## V.   ISSUES IN CONTENTION

Plaintiff raises the following arguments in support of his position that the ALJ's decision is not supported by substantial evidence:

1.   The ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to properly assess the opinion of consultative examiner Dr. Elke Lorensen. (Dkt. No. 11 at 15-21.)

2.      The Appeals Council erred by refusing to review Plaintiff's case despite his submittal of additional evidence. (Dkt. No. 11 at 21-24.)

3.      The ALJ's step five determination is not supported by substantial evidence because he relied upon VE testimony that Plaintiff could perform an obsolete job that does not exist in significant numbers in the national economy. (Dkt. No. 11 at 24-27.)

Defendant contends that the ALJ's decision is supported by substantial evidence and that the Appeals Council properly denied review. (Dkt. No. 13 at 9-27.) For the following reasons, this court finds that the ALJ's error at step five requires remand for further administrative proceedings.

## VI.     RFC AND MEDICAL OPINION EVIDENCE

### A.      Legal Standards

#### 1.      RFC

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. . . ." A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)); *Babcock v. Berryhill,* No. 5:17-CV-00580 (BKS), 2018 WL 4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R. §§ 404.1545, 416.945.

*See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Kirah D. v. Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at *8 (N.D.N.Y. Feb 13, 2019); *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010).  An ALJ must specify the functions a plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities.  *Roat v. Barnhart,* 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010); *Martone v. Apfel*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183, *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016); *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004).  The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence.  *Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 374184, at *7).

## 2. Evaluating Medical Evidence

The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017,[2] and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded.  According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion."  *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867–68 (Jan. 18, 2017), *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors:

---

[2] Plaintiff's application was dated May 16, 2017. (T. 203-217.)  Thus, the new regulations apply in his case.

supportability; consistency; relationship with the claimant; specialization; and "other factors." 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." *Id.* at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1). The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that formed the foundation of the treating source rule. *Revisions to Rules*, 82 Fed. Reg. 5844-01 at 5853.

An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c (b)(2), 416.920c(b)(2). With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(1), 416.920c(c)(1). The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(2), 416.920c(c)(2).

Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion. *Id.* at §§ 404.1520c(b)(2), 416.920c(b)(2). However, where the ALJ has found two or more medical

opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5). *Id.* at §§ 404.1520c(b)(3), 416.920c(b)(3).

### B. Application

### 1. The ALJ's evaluation of Dr. Lorensen's opinion was supported by substantial evidence.

In reaching his RFC determination, the ALJ considered a number of medical opinions related to Plaintiff's physical and mental limitations. (T. 24-26.) With regard to Plaintiff's physical abilities, Dr. Elke Lorensen performed a consultative examination of Plaintiff on June 19, 2017. (T. 340-343.) Based on that examination, Dr. Lorensen opined that Plaintiff had no gross limitations with regard to sitting, standing, walking, or handling small objects. (T. 342.) She also opined that Plaintiff had "moderate" limitations for bending, lifting, reaching, and turning his head to the left, and that Plaintiff should avoid smoke, dust, and other respiratory irritants. (*Id*.) The ALJ found Dr. Lorensen's opinion to have "some persuasive value." (T. 25.) In particular, the ALJ found support in the consultative examination report and overall record for Dr. Lorensen's findings regarding Plaintiff's generally unrestricted ability to sit, stand, and walk, and incorporated limitations related to bending stooping, and overhead reaching. (*Id*.) However, he found no support for Dr, Lorensen's opinion regarding Plaintiff's ability to turn his head to the left or his need to avoid smoke, dust, and other respiratory irritants. (*Id*.) Although Plaintiff showed a reduced ability to rotate his neck during the consultative examination, the ALJ found no evidence that this was a permanent or long-term impairment, and noted that Plaintiff reported an ability to perform daily activities that would be expected to require turning his head, including feeding and bathing his dog, riding in a car, shopping, and doing "some" laundry. (T. 25, 341,

368.)  The ALJ also found that the restriction related to respiratory irritants appeared to be solely based on Plaintiff's diagnosed asthma, but was inconsistent with the longitudinal record that showed few breathing issues. (T. 25, 360-361)

Plaintiff contends that the ALJ improperly rejected that portion of Dr. Lorensen's opinion addressing Plaintiff's ability to turn his head to the left.  (Pl. Br. at 17.)  This argument is unpersuasive.  As an initial matter, "there is no requirement that the ALJ pick one RFC [opinion] and use that particular evaluation in its entirety."  *Alexandrea R.R. v. Berryhill*, No. 15-CV-756-FPG, 2019 WL 2269854, at *6 (N.D.N.Y. May 28, 2019).  Rather, "it is the ALJ's responsibility to choose between properly submitted medical opinions and other competent evidence to piece together an overall [RFC] assessment."  *Id.*

In addition, an ALJ may consider relevant regular daily activities in his evaluation of a consultative examiner's report that is based on a single examination.  *See George A. v. Comm'r of Soc. Sec.*, No. 20-CV-691 (MJR), 2021 WL 2102527, at * (W.D.N.Y. May 25, 2021) (rejecting consultative opinion that plaintiff had moderate to marked limitations for repetitive twisting and bending of the cervical spine as inconsistent with plaintiff's report that he regularly drove a car).  Therefore, the ALJ did not err by considering the apparent conflict between Plaintiff's alleged neck impairment and his performance of day to day activities that would ordinarily require an individual to turn their head.

More important than the ALJ's discussion of Plaintiff's activities of daily living, however, is the ALJ's extensive review of Plaintiff's treatment history for neck and back pain, dating back to the alleged onset date of September 24, 2016. (T. 18.)  As the ALJ noted in his decision, Plaintiff required a cervical collar or neck brace three to four times per week in the immediate months after his September 2016 motor vehicle accident, and showed a reduced range

12

of motion in the cervical spine, lumbar spine and left shoulder. (T. 18-19, 308-309.) On January

10, 2017, Plaintiff displayed a normal range of motion in his neck during a physical examination

by his primary care physician, Dr. Sandra Sulik. (T. 356-357.) On March 9, 2017, Plaintiff's

primary orthopedist concluded that "I don't find anything wrong with him," based upon a

physical examination, and also found x-rays of Plaintiff's cervical and lumbar spine were

"normal for his age." (T. 19, 313.) The physician recommended conservative treatment for what

he deemed to be degenerative changes, rather than traumatic injuries. (T. 314.)

    The ALJ also discussed treatment notes suggesting that any range of motion issues

affecting Plaintiff's ability to turn his head or rotate his neck were intermittent or irregular. An

orthopedic examination on July 6, 2017, less than one month after Dr. Lorensen's consultative

examination, showed only a "mild" decrease in Plaintiff's ability to rotate his head. (T. 21, 656.)

In November 2017, Plaintiff advised his physical therapist that his neck pain "sometimes" caused

"difficulty looking around like it gets stuck." (T. 532.) Although he consistently reported neck

pain, his complaints of difficulty rotating or turning his head became less frequent after he began

cervical injection therapy in December 2017. (T. 22, 571, 581, 587, 592, 604, 610, 628, 646.)

More often, Plaintiff reported cervical spine pain that radiated a numb, burning feeling to his

arms. (T. 23, 88, 522, 539, 583, 601.) The ALJ addressed this functional limitation by including

restrictions on lifting and overhead reaching in the RFC. (T. 17.)

    The ALJ's conclusions regarding Plaintiff's back and neck pain are consistent with the

various opinions[3] of Plaintiff's orthopedic surgeon, Dr. Matthew Scuderi, whose treatment

relationship dated back to 2009. (T. 338, 425, 768-69, 776.) In September 2017, Dr. Scuderi

---

[3] Dr. Scuderi did not prepare a formal Medical Source Statement, but his opinion is set forth in various examination notes.

opined that Plaintiff could return to work but was restricted from lifting more than twenty

pounds. (T. 425.)  In June 2018, Dr. Scuderi recommended that Plaintiff avoid strenuous or

repetitive overhead lifting greater than twenty-five pounds. (T. 768-69.)  He repeated this

recommendation after an August 2018 physical examination. (T. 776.)  Dr. Scuderi's notes do

not include any restrictions on Plaintiff turning his head.  The ALJ found Dr. Scuderi's opinions

to be "persuasive" and incorporated the orthopedic surgeon's recommended restrictions into the

RFC determination that limited Plaintiff to sedentary work with no overhead lifting or reaching.

(T. 17, 26.)

        In arguing that the ALJ's RFC determination failed to adequately address his cervical

spine impairment, Plaintiff emphasizes those discrete portions of the treatment record that raise

concerns about the range of motion in his neck.  (Dkt. No. 11, at 17-18.)  However, as outlined

above, the ALJ considered such evidence in his decision, along with the broader medical record,

opinion evidence, and Plaintiff's testimony before he reached a less restrictive but substantially

supported conclusion. (T. 18-26.)  Therefore, Plaintiff's disagreement with the factual

determination that the ALJ drew from this record evidence is not a basis for remand. "The

substantial evidence standard means that once an ALJ finds facts, [a court] can reject those facts

only if a reasonable factfinder would *have to conclude otherwise.*"  *Brault v. Soc. Sec. Admin*.,

683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (emphasis in original).  In other words, a claimant

must "show that no reasonable factfinder could have reached the ALJ's conclusions based on the

evidence in the record."  *Z.J.F. ex rel. Conkling v. Comm'r of Soc. Sec*., No. 6:16-CV-1397

(WBC), 2018 WL 1115516, at *6 (N.D.N.Y. Feb. 27, 2018).  Plaintiff has not done so.

        It is well-settled that it is not improper for an ALJ to adopt only a portion of a medical

source's opinion; indeed, "[a]lthough the ALJ's conclusion may not perfectly correspond with

any of the opinions of medical sources cited in his [or her] decision, he or [she] was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order). Thus, based on the record as a whole, the court concludes that the ALJ's decision not to adopt that portion of Dr. Lorensen's opinion related to Plaintiff's ability to turn his head was supported by substantial evidence. *See Dierdre R. v. Comm'r of Soc. Sec.*, No. 5:17-CV-0395 (TWD), 2018 WL 4565769, at *8 (N.D.N.Y. Sept. 24, 2018) (concluding that the ALJ did not err in discounting the consultative examiner's opinion that the plaintiff had moderate to marked limitations reaching where the record gleaned generally unremarkable findings); *Babcock v. Berryhill*, No. 5:17-CV-00580 (BKS), 2018 WL 4347795, at *13 (N.D.N.Y. Sept. 12, 2018) (concluding that substantial evidence supported the ALJ's decision to reject consultative examiner's opinion that the claimant had moderate to marked limitations reaching).

## VII.   APPEALS COUNCIL CONSIDERATION OF NEW EVIDENCE

During the administrative appeal process, Plaintiff provided additional medical records that he contends undermine the ALJ's decision not to include any restrictions on Plaintiff turning his head or rotating his neck in the RFC. Upon review of this new evidence, the court finds that the Appeals Council did not err in concluding that the additional records were unlikely to impact the ALJ's decision.

### A.  Legal Standards

As the Second Circuit held in *Perez v. Chater*, 77 F.3d 41, 44 (2d Cir. 1996):

> When the Appeals Council grants review, the decision of the Appeals Council is the final decision of the Secretary. See 20 C.F.R. §§ 404.981, 416.1481. However, if the Appeals Council denies review, the ALJ's decision becomes the Secretary's final decision. See §§ 404.981, 416.1481. The final decision of the Secretary is subject to judicial review. 42 U.S.C. § 405(g).

In cases such as this one, where the Appeals Council has denied review of the ALJ's decision, "it is well-settled that '[t]he role of the district court is to determine if the Appeals Council erred when it determined that the new evidence was insufficient to trigger review of the ALJ's decision.'" *Kirah D. v. Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at *4 (N.D.N.Y. Feb. 13, 2019) (citing, *inter alia*, *Allborty v. Comm'r of Soc. Sec.*, No. 6:14-CV-1428 (DNH/ATB), 2016 WL 770261, at *8 (N.D.N.Y. Jan. 28, 2016), (Rep't-Rec.), *adopted*, 2016 WL 796071 (N.D.N.Y. Feb. 22, 2016)).

"Once evidence is added to the record, the Appeals Council must then consider the entire record, including the new evidence, and review a case if the 'administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'" *Lesterhuis v. Colvin*, 805 F.3d 83, 86 (2d Cir. 2015) (quoting 20 C.F.R. § 404.970(b)). "The Appeals Council is obligated to consider 'new and material evidence.'" *Stratton v. Colvin*, 51 F. Supp. 3d 212, 218 (N.D.N.Y. 2014) (citing 20 C.F.R. § 404.970(b)). "New evidence is 'material' if it is: '(1) relevant to the claimant's condition during the time period for which benefits were denied and (2) probative.'" *Stratton*, 51 F. Supp. 3d at 218 (quoting *Pollard v. Halter*, 377 F.3d 183, 193 (2d Cir. 2004)). "'The concept of materiality requires, in addition, a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide claimant's application differently.'" *Id*. (quoting *Pollard*, 377 F.3d at 193) (alteration in original).

20 C.F.R. § 404.976(b)(1) provides that the "Appeals Council will consider ... any new and material evidence submitted to it which relates to the period on or before the date of the administrative law judge hearing decision", which in this case was February 27, 2019. (T. 8.) Such evidence must be both (1) relevant to the claimant's condition during the relevant period and

(2) probative, and additionally must create "a reasonable possibility that the new evidence would have influenced the Commissioner to decide claimant's application differently." *Pollard v. Halter*, 377 F.3d 183, 193 (2d Cir.2004) (brackets and internal quotation marks omitted).

### B.     Application

On May 1, 2019, Plaintiff provided the Appeals Council the results of a cervical and lumbar spine MRI conducted on February 7, 2019. (T. 65-69.)  Although the MRI occurred approximately a week prior to the February 13, 2019 hearing, it was not part of the record before the ALJ.  On January 2, 2020, while the administrative appeal was still pending, Plaintiff submitted treatment notes from July 2019 through October 2019, including an operative report from his September 12, 2019 cervical spine surgery.  (T. 40-63.)

As part of its April 17, 2020 denial of Plaintiff's request for review, the Appeals Council determined that the February 7, 2019 MRI report did not show a reasonable probability that it would change the outcome of the ALJ's decision. (T. 2.)  The Appeals Council also rejected the treatment notes from July 2019 through October 2019, because the records did not relate to the period considered by the ALJ. (*Id.*)

The parties both recognize that the additional evidence provided by Plaintiff is "new" in that it was never presented to the ALJ.  *See Ovitt v. Colvin*, No. 12-CV-1522, 2014 WL 1806995, at* 3 (N.D.N.Y. May 7, 2014) (defining new evidence as "any evidence that has not been considered previously during the administrative process").  The parties dispute whether the evidence is material to the ALJ's decision.

The July 9, 2019 treatment notes included as part of Plaintiff's second submittal to the Appeals Council reflect that the decision to move ahead with cervical spine surgery included a review of the February 7, 2019 MRI results, so the court will consider all the new evidence

17

together. (T. 46.)  Plaintiff contends that the MRI results and the treatment notes, culminating in his September 2019 cervical spine surgery, "undermine the ALJ's rejection of Dr. Lorensen's neck-turning limitation." (Dkt. No. 11, at 23.)

It is true that "[c]ourts throughout the Second Circuit have held that evidence of a post-decision surgery may be relevant and material to whether a claimant was previously disabled." *Wilbon v. Colvin*, No. 15-CV-756 (FPG), 2016 WL 5402702, at *6 (W.D.N.Y. Sept. 28, 2016) (collecting cases).  However, Defendant correctly points out that the treatment notes only reflect the progressive nature of Plaintiff's spinal impairment, and do not present any new functional limitations that are missing from the ALJ's RFC determination, particularly with regard to Plaintiff's ability to turn his head. (Dkt. No. 13, at 19.)

Based upon the ALJ's consideration of the record evidence in his decision, he was well aware of both the progressive nature of Plaintiff's spinal impairments and the resulting impact on the use of his upper and lower extremities. (T. 327, 392, 425, 514.)  As described above, the ALJ included functional limitations in his RFC determination to address these concerns, including restrictions on overhead lifting and reaching, a sit-stand option, and use of a cane. (T. 17.)  While the new evidence demonstrates a deterioration in Plaintiff's condition that ultimately required surgery, such progressive deterioration of Plaintiff's condition does not necessarily reflect on Plaintiff's previous condition, and, therefore, would not affect the ALJ's assessment of whether Plaintiff was disabled prior to the date of the ALJ's decision.  *See Eric B. v. Comm'r of Soc. Sec.*, No. 6:17-CV-511 (LEK/TWD), 2019 WL 4686436, at *5 (N.D.N.Y. Sept. 26, 2019) ("where it is questionable whether the new medical records indicate a change in Plaintiff's condition, the records are immaterial and not a basis for remand."); *see also Wilbon*, 2016 WL 5402702, at *4 ("The fact that [a doctor] noted 'degenerative changes' in [p]laintiff's lumbosacral spine in 2015

could mean that [p]laintiff's back condition worsened at some point between the 2012 x-ray and the ALJ's decision in 2014, but it could just as easily mean that [p]laintiff's back condition worsened sometime in the year after the ALJ's decision."). Accordingly, this court finds that the Appeals Council did not err in concluding that the additional evidence was unlikely to change the outcome of the ALJ's March 4, 2019 decision.

## VIII.    STEP FIVE DETERMINATION

### A.    Legal Standards

If a claimant is unable to perform the full range of a particular exertional category of work, or the issue is whether a claimant's work skills are transferable to other jobs, then the ALJ may utilize the services of a VE.  20 C.F.R. §§ 404.1566, 416.966.  A VE may provide testimony regarding the existence of jobs in the national economy and whether a particular claimant may be able to perform any of those jobs given his or her functional limitations.  *See Rautio v. Bowen*, 862 F.2d 176, 180 (8th Cir. 1988); *Dumas v. Schweiker*, 712 F.2d 1545, 1553-54 (2d Cir. 1983).

If the ALJ utilizes a VE at the hearing, generally, the VE is questioned using a hypothetical question that incorporates a plaintiff's limitations. Although the ALJ is initially responsible for determining the claimant's capabilities based on all the evidence, *see Dumas v. Schweiker*, 712 F.2d 1545, 1554 n.4 (2d Cir. 1983), a hypothetical question that does not present the full extent of a claimant's impairments cannot provide a sound basis for vocational expert testimony.  *See De Leon v. Sec'y of Health and Human Servs.*, 734 F.2d 930, 936 (2d Cir. 1984); *Lugo v. Chater*, 932 F. Supp. 497, 503-04 (S.D.N.Y. 1996).  The Second Circuit has stated that there must be "substantial record evidence to support the assumption upon which the vocational expert based [her] opinion." *Dumas*, 712 F.2d at 1554.  *See also Peatman v. Astrue*, No. 5:10-CV-307, 2012 WL 1758880, at *7 n.5 (D. Vt. May 16, 2012) (the hypothetical question posed to

the VE must accurately portray the plaintiff's physical and mental impairments) (citations omitted); *Green v. Astrue*, No. 08 Civ. 8435, 2012 WL 1414294, at *18 (S.D.N.Y. April 24, 2012) (citing *Dumas*, 712 F.2d at 1553-54).

### B. Application

Plaintiff argues that because the ALJ erred with respect to her RFC analysis, the hypothetical question did not take all of his functional limitations into account. (Pl.'s Br. at 16). However, because this court has found that the ALJ's findings regarding Plaintiff's RFC were supported by substantial evidence, his hypothetical question that mirrored the RFC and the resulting reliance upon the VE testimony were similarly supported by substantial evidence. (T. 22-23, 55-57).

Plaintiff's counsel also contends that the VE's testimony did not provide substantial evidence for the ALJ to conclude that there were a significant number of jobs in the national economy that Plaintiff could perform. (Pl.'s Br. at 16-17). At the hearing, the VE identified three representative sedentary jobs that Plaintiff could perform: document preparer, with 44,595 jobs in the national economy; food and beverage order clerk, with 2,050 jobs in the national economy; and charge account clerk, with 1,513 jobs in the national economy. (T. 28, 106).

"Courts have generally held that what constitutes a 'significant' number is fairly minimal." *Fox v. Comm'r of Soc. Sec.*, No. 6:02-CV-1160, 2009 WL 367628, at *20 (N.D.N.Y. Feb. 13, 2009). In *Koutrakos v. Colvin*, Magistrate Judge Joan Margolis discussed the "significant numbers issue" and reviewed some of the case law discussing whether "significant numbers" existed. *Koutrakos v. Colvin*, No. 3:13-CV-1290, 2015 WL 1190100, at *20-22 (D. Conn. Mar. 16, 2015). Magistrate Judge Margolis first pointed out that "[n]either the Social

Security Act, nor the Commissioner's Regulations or Rulings provide a definition for a 'significant' number of jobs." *Id*. at *21. The court is generally guided by numbers that have been found "significant" in other cases. *Id*. (citing *Schadenfroh v. Colvin*, No. 09-CV-223, 2014 WL 1260123 (S.D. Ind. Mar. 27, 2014)). Significant numbers include 408 jobs in the regional economy and 98,008 jobs in the national economy; and 180 jobs in the regional economy and 40,027 jobs nationally. *Barbato v. Astrue*, No. 09-CV-6530, at *7 (W.D.N.Y. July 7, 2010) (citing *Lee v. Sullivan*, 988 F.2d 789, 794 (7th Cir. 1993) (1400 jobs in the regional economy was significant) (citing cases); *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987) (174 jobs in the local economy, 1600 in the state, and 80,000 in the national economy were significant); *Dumas v. Schweiker*, 712 F.2d 1545, 1549, 1553-54 (2d Cir. 1983) (150 jobs in the local economy and 112,000 in the national economy were significant numbers)). *See also Roe v. Colvin*, No. 1:13-CV-1065, 2015 WL 729684, at *7 (N.D.N.Y. Feb. 19, 2015) (630 jobs locally and 44,000 nationally was significant); *McCusker*, 2014 WL 6610025, at *3 (100 jobs in the Capital Region; 2,250 in New York State, and 74,470 nationally was significant); *Gray v. Colvin*, No. 12-CV-6485, 2014 WL 4146880, at *6 (W.D.N.Y. Aug. 19, 2014) (60 jobs regionally, over 16,000 nationally was significant).

Consistent with that caselaw, this court concludes that the VE testimony did not establish that the positions of food and beverage order clerk and charge account clerk existed in significant numbers in the national economy. *See Peach v. Berryhill*, No. 1:17-CV-201 (MAT), 2018 WL 4140613, at * (W.D.N.Y. August 30, 2018) (rejecting ALJ's conclusion that jobs existed in significant numbers where VE testified that only 915 food and beverage order clerk positions were available nationally, and only 1,404 charge account clerk positions were available nationally). Defendant has not mounted significant opposition to that reasonable conclusion.

Plaintiff's argument at step five, then, centers on whether the position of document

preparer is obsolete. According to the Dictionary of Occupational Titles ("DICOT"), a worker in

this position:

> Prepares documents, such as brochures, pamphlets, and catalogs, for
> microfilming, using paper cutter, photocopying machine, rubber stamps, and other
> work devices: Cuts documents into individual pages of standard microfilming size
> and format when allowed by margin space, using paper cutter or razor knife.
> Reproduces document pages as necessary to improve clarity or to reduce one or
> more pages into single page of standard microfilming size, using photocopying
> machine. Stamps standard symbols on pages or inserts instruction cards between
> pages of material to notify MICROFILM-CAMERA OPERATOR (business ser.)
> 976.682-022 of special handling, such as manual repositioning, during
> microfilming. Prepares cover sheet and document folder for material and index
> card for company files indicating information, such as firm name and address,
> product category, and index code, to identify material. Inserts material to be
> filmed in document folder and files folder for processing according to index code
> and filming priority schedule.

See *Zacharopoulos v. Saul*, No. 19-CV-5075, 2021 WL 235630, at *8 (E.D.N.Y. Jan. 25,

2021).(citing DICOT definition for document preparer.)

As the *Zacharopoulos* court summarized,,

> That the technology underlying such a career is rapidly descending into
> obsolescence can be readily demonstrated: at this writing, a growing number of
> Americans are unacquainted with "microfilming," "rubber stamps" and perhaps
> even "photocopying." And while microfilm may still service some obscure, niche
> markets, in the digital economy, its trajectory resembles that of carbon paper and
> punch cards.

*Id.*, 2021 WL 235630, at *8. With that in mind, an increasing number of courts have recognized

the obsolete nature of the document preparer position and remanded for further administrative

proceedings where there is no record evidence of other jobs existing in significant numbers that a

plaintiff can perform. *Id.*, 2021 WL 235630, at *8-9 (collecting cases); *Kiiroja v, Comm'r of*

*Soc. Sec.*, No. 20-CV-0078 (GRB), 2021 WL 934100, at *1-2 (E.D.N.Y. March 11, 2021)

22

(remanding where only job identified by VE that plaintiff could actually perform was the obsolete document preparer position)[4]; *see also Cunningham v. Astrue*, 360 F. App'x 606, 615 (6th Cir. 2010) ("While the Social Security Commissioner does take administrative notice of [the DOT] when determining if jobs exist in the national economy, 20 C.F.R. § 404.1566(d)(1), common sense dictates that when such descriptions appear obsolete, a more recent source of information should be consulted. The two relevant descriptions here - document preparer and security camera monitor -strike us as potentially vulnerable for this reason. Without more, however, we cannot adequately review whether these job descriptions were up-to-date and, thus, whether the VE's testimony was reliable."); *Wood v. Berryhill*, No. 3:17-cv-5430 (RJB-BAT), 2017 WL 6419313, at *1 (W.D. Wash. Nov. 17, 2017) (("[T]he positions of document preparer and nut sorter do not exist in significant numbers in the national economy."); *Czosnowski v. Comm'r, Soc. Sec.*, No. RDB-13-1467, 2014 WL 1660083, at *4 (D. Maryland, April 23, 2014) (holding that ALJ's reliance on the VE testimony that document preparer position exists "in significant numbers in the national economy is not, on the current record consisting exclusively of the VE's reliance on a twenty-year-old [DICOT], supported by substantial evidence.").

The Second Circuit has noted "the marked absence of any applicable regulation or decision of this Court requiring a vocational expert to identify with greater specificity the source of his figures or to provide supporting documentation" and concluded "[t]he ALJ did not need to find specific numbers of jobs – all he was required to do was find that 'substantial' positions exist." *Brault*, 683 F.3d at 450. Still, courts have remanded where the ALJ relied upon VE

---

[4] Like this case, the *Kiiroja*, court found that the ALJ's RFC determination, which primarily relied upon a consultative examiner's opinion, was supported by substantial evidence, but remanded due to the errors at step five. *Kiiroja*, 2021 WL 934100, at *2.

testimony that failed to reliably reflect the number of jobs that a plaintiff could actually perform in light of his or her RFC. *Marvin v. Colvin*, No. 3:12-CV-1779, 2014 WL 1293509, at*10 (N.D.N.Y. March 31, 2014) (remanding where VE testified that his job figures included positions that plaintiff would not be able to perform due to an RFC that limited her to unskilled light work); *Rosa v. Colvin*, 3:12-CV-170 (LEK/TWD), 2013 WL 1292145 (N.D.N.Y. Mar. 27, 2013) (remanding where VE testified that his job estimates included positions that plaintiff would not be able to perform because of his functional limitations.); *see also Snow v. Colvin*, No. 3:15-CV-694 (FJS), 2016 WL 2992145, at *4 (N.D.N.Y. May 20, 2016) (remanding for reconsideration of expert evidence when plaintiff had RFC to perform less than full range of sedentary work, and VE testified that he had made no attempt to adjust broad national job numbers to reflect plaintiff's functional limitations).

In this case, the VE identified three positions that Plaintiff could perform. One such position, document preparer, is increasingly recognized as obsolete. The other two positions, food and beverage order clerk and charge account clerk, do not, based on the VE testimony, exist in significant numbers in the national economy. Those factors certainly militate toward remand. However, it must be noted that neither the ALJ nor Plaintiff's counsel questioned the VE on the reliability of his job figures during his testimony, despite the availability of cross-examination. (T. 105-108.) Defendant thus argues that the ALJ could reasonably rely on the VE's testimony as presented during the hearing, and had no duty to further develop the record regarding the number of available positions, because plaintiff failed to object to or otherwise challenge the VE's testimony on this point. (Dkt. No. 13 at 24-26.) Indeed, in certain cases, courts have accepted this argument and rejected a request for remand. *Zacharopoulos*, 2021 WL 235630, at *11 (finding that VE testimony that plaintiff could perform the job of document preparer did not

24

constitute substantial evidence at step five but declining to remand in part due to plaintiff's counsel's failure to raise the issue at the administrative level); *Keovilay v. Berryhill*, No. 3:19-CV-0735 (RAR), 2020 WL 3989567, at *9 (D. Conn. July 15, 2020) (finding that ALJ's decision was supported by substantial evidence even though the vocational expert did not specify where the job numbers came from and plaintiff's counsel did not object to vocational expert's qualifications or to the testimony regarding the number of jobs); *see also Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002)) ("When no one questions the vocational expert's foundation or reasoning, an ALJ is entitled to accept the vocational expert's conclusion.... If the basis of the vocational expert's conclusions is questioned at the hearing, however, then the ALJ should make an inquiry ... to find out whether the purported expert's conclusions are reliable.").

However, this court notes that in *Zacharopoulos*, the most analogous case, the ALJ had already identified substantial evidence that the plaintiff could perform their prior work, and only reached an "alternative holding" that the individual could also perform the document preparer position, so remand was unnecessary. In this case, the ALJ found that Plaintiff could not perform his prior employment, and the almost certainly obsolete document preparer position is the only representative position that the VE testimony suggested was available in anything close to a significant number of jobs.

In addition, although the ALJ and Plaintiff's counsel did not press the issue, the VE did provide some insight into his analysis. The VE testified that he based his opinion on the DICOT and by job numbers published by SkillTran, Incorporated, with one exception. (T. 105-108.) Because DICOT did not differentiate between types of reaching, the ALJ's consideration of plaintiff's overhead lifting restriction was based upon his professional experience. (T. 105.) This

testimony strongly suggests that the VE based his testimony on the nature of the document preparer position solely on the outdated job description in the DICOT.[5]

The court has weighed these factors along with two well-established principles. First, Social Security administrative hearings are, by their nature, non-adversarial. "[T]he duty of the ALJ, unlike that of a judge at trial, is to 'investigate and develop the facts and develop the arguments both for and against the granting of benefits.'" *Kristen F. v. Comm'r of Soc. Sec.*, No. 3:20-CV-464 (ATB), 2021 WL 1668933, at *6 (N.D.N.Y. April 27, 2021) (quoting *Martin v. Comm'r of Soc. Sec.*, No. 18-CV-720(MWP), 2020 WL 611015, at *4 (W.D.N.Y. Feb. 10, 2020)). Second, although a claimant has the general burden to prove he has a disability under the definitions of the Social Security Act, the burden shifts to the Commissioner at step five "'to show there is other work that [the claimant] can perform.'" *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (quoting *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 445 (2d Cir. 2012)).

In light of the overwhelming evidence that the document preparer position, as defined in the DICOT, is obsolete in the national economy, the non-adversarial nature of the administrative hearing process, and the ALJ's burden at step five, this court concludes that the ALJ could not reasonably rely solely on the VE testimony that there were approximately 45,000 document preparer positions in the national economy that Plaintiff could perform. Thus, the ALJ's determination at step five and the ultimate determination of disability were not supported by

---

[5] In contrast, courts have found that an ALJ had substantial evidence regarding the availability of jobs where a VE testified that the "document preparer" job title was "performed differently in the current labor market" using modern technology. *Sena v. Berryhill*, 3:17-CV-912 (MPS), 2018 WL 3854771, at *16 (D. Conn. Aug. 14, 2018) *Sena* is inapplicable to this case, where there is no record evidence that the VE was referring to this modern version of document preparer, or that an individual with Plaintiff's RFC could perform the requirements of this more technologically advanced position.

substantial evidence, and remand is necessary for further administrative proceedings to

determine whether there are jobs that exist in significant numbers that Plaintiff can perform.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is

**<u>GRANTED</u>**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 13) is

**<u>DENIED</u>**; and it is further

**ORDERED** that Defendant's decision denying Plaintiff disability benefits is

**VACATED**, and this case is **REMANDED**, pursuant to Sentence Four of 42 § U.S.C. 405(g) for

proceedings consistent with this Decision and Order.


Dated: July 13, 2021
      Binghamton, New York

                        Miroslav Lovric
                        U.S. Magistrate Judge